# Exhibit 2

**EXHIBIT A**

**<u>RESTRICTIVE COVENANTS</u>**

In consideration for the grant of Class B Units of Saber Parent Holdings LP (together with its affiliates and subsidiaries, the "<u>Company</u>") to the undersigned individual granted such Class B Units (the "<u>Participant</u>"), the Participant hereby agrees that (a) to the extent that the Participant is a party to any employment agreement with the Company containing covenants regarding non-competition, non-solicitation, or similar provisions, all such covenants are hereby deemed to be made, as though such covenants were also set forth in this Exhibit A, and that Participant shall be bound by and comply with such restrictive covenants in accordance with their terms (and, for the avoidance of doubt, this <u>Exhibit A</u> shall not expand or otherwise supersede the scope of such covenants, which shall continue as valid and binding obligations on such Participant in accordance with their terms), or (b) to the extent that the Participant is not a party to any employment agreement with the Company containing covenants regarding non-competition, non-solicitation, or similar provisions, the Participant shall be bound by and comply with the restrictive covenants (the "<u>Restrictive Covenants</u>") set forth on this <u>Exhibit A</u> (this "<u>Agreement</u>").

1.      <u>Non-Solicitation; Non-Hire</u>.  During the period of the Participant's employment and for the 24-month period following the termination of the Participant's employment with the Company (the "<u>Restricted Period</u>"), the Participant agrees that the Participant shall not, directly or indirectly:

(a)      encourage, induce, hire or solicit or seek to induce, hire or solicit any person engaged with the Company or its Subsidiaries as an employee, agent, independent contractor or otherwise (or any such person that was so engaged during the one-year period immediately preceding such initial inducement or solicitation) (each a "<u>Company Employee</u>") to end his or her engagement or employment with the Company or its Subsidiaries; or

(b)      whether on the Participant's own behalf or on behalf of or in conjunction with any other person, firm, corporation or entity, (i) solicit (whether by mail, telephone, personal meeting or otherwise), encourage or induce any customer, supplier or client of the Company or its Subsidiaries to reduce or refrain from doing any business with the Company or its Subsidiaries, (ii) interfere with (or attempt to interfere with) any relationship between the Company or its Subsidiaries and any of their respective customers, suppliers or clients (or any person or entity in respect of which the Participant is aware that the Company or its Subsidiaries has approached or has made significant plans to approach as a prospective customer, supplier or client), or (iii) aid other persons or entities involved in any such acts.

2.      <u>Non-Disparagement</u>.  The Participant agrees that the Participant will not, during the Restricted Period, directly or indirectly, whether in written or oral form, make any disparaging or defamatory comments regarding the Company or its Subsidiaries or their respective current or former directors, officers, employees, customers or business partners in any respect or make any comments concerning any aspect of the Participant's relationship with the Company or its Subsidiaries or any conduct or events which

US-DOCS\139611242.1

precipitated any termination of the Participant's employment from the Company and its Subsidiaries. However, the obligations under this Section 2 shall not be violated by truthful statements made in (i) response to legal process, required governmental testimony or filings or administrative or arbitral proceedings (including, without limitation, depositions in connection with such proceedings) or (ii) making normal commercial competitive type statements in the good faith performance of the Participant's duties to the Company or any of its Subsidiaries.

3.      Proprietary Information. The Participant agrees that the Participant shall not use for the Participant's own purpose or for the benefit of any person or entity other than the Company or its partners or affiliates, nor shall the Participant otherwise disclose to any individual or entity at any time while the Participant is employed by the Company or thereafter any Proprietary Information of the Company unless such disclosure (a) is in connection with the Participant's performance of duties to the Company or its Subsidiaries or has been authorized by the Board of Managers or, with respect to the period of time following the termination of the Participant's employment, has been authorized by the Board of Managers; or (b) is required by law, a court of competent jurisdiction or a governmental or regulatory agency. Notwithstanding anything to the contrary contained herein, nothing in this Agreement prohibits the Participant from (i) reporting possible violations of federal law or regulation to any United States governmental agency or entity in accordance with the provisions of and rules promulgated under Section 21F of the Securities Exchange Act of 1934 or Section 806 of the Sarbanes-Oxley Act of 2002, or any other whistleblower protection provisions of state or federal law or regulation (including the right to receive an award for information provided to any such government agencies), or (ii) communicating directly with, cooperating with, or providing information to, or receiving financial awards from, any federal, state or local government agency, including without limitation the U.S. Securities and Exchange Commission, the U.S. Commodity Futures Trading Commission, the U.S. Department of Justice, the U.S. Equal Employment Opportunity Commission, or the U.S. National Labor Relations Board, without notifying or seeking permission from the Company, (iii) exercising any rights the Participant may have under Section 7 of the U.S. National Labor Relations Act, such as the right to engage in concerted activity, including collective action or discussion concerning wages or working conditions, or (iv) discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination based on a protected characteristic or any other conduct that the Participant has reason to believe is unlawful. The Participant acknowledges that the Company has provided the Participant with the following notice of immunity rights in compliance with the requirements of the Defend Trade Secrets Act of 2016: (i) the Participant shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of Proprietary Information that is made in confidence to a federal, state or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law, (ii) the Participant shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of Proprietary Information that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal and (iii) if the Participant files a lawsuit for retaliation by the Company for reporting a suspected violation of law, the Participant may disclose the Proprietary Information to the Participant's attorney and use the Proprietary Information in the court proceeding, if the Participant files any document containing the Proprietary Information under seal, and does not disclose the Proprietary

US-DOCS\139611242.1

Information, except pursuant to court order. Notwithstanding anything to the contrary in this Agreement, no provision of this Agreement shall be interpreted so as to impede the Participant (or any other individual) from reporting possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General, or making other disclosures under the whistleblower provisions of federal law or regulation. The Participant does not need the prior authorization of the Company to make any such reports or disclosures and the Participant shall not be required to notify the Company that such reports or disclosures have been made.

4. <u>Surrender of Records</u>. The Participant agrees that the Participant shall not retain and shall promptly surrender to the Company promptly following the Participant's Termination Date or such earlier date requested by the Company all correspondence, memoranda, files, manuals, financial, operating or marketing records, magnetic tape, or electronic or other media of any kind which may be in the Participant's possession or under the Participant's control or accessible to the Participant which contain any Proprietary Information (it being understood that it shall not be a violation of this Agreement for the Participant to retain his personal address book, any plans or agreements related to Company equity held by the Participant or records of compensation or benefits, or benefit plan documents, programs or communications). The Participant agrees that the Participant will not make or retain copies of Proprietary Information in any form whatsoever (including, without limitation, information contained in computer memory or stored on electronic devices, including hard drives and removable storage media, and information in online or cloud storage or backup or restoration points) and will not delete or alter any information contained on any Company computer or other electronic device or equipment before returning the Company computer or other electronic device or equipment to the Company.

5. <u>Developments Retained and Licensed</u>. The Participant has attached hereto, as <u>Schedule A</u>, a list describing with particularity all developments, original works of authorship, improvements, and trade secrets that were created or owned by the Participant prior to the commencement of the Participant's employment (collectively referred to as "<u>Prior Developments</u>"), that belong solely to the Participant or belong to the Participant jointly with another, that relate in any way to any of the proposed businesses, products, or research and development of the Company and its Subsidiaries, and that are not assigned to the Company hereunder, or if no such list is attached, the Participant represent that there are no such Prior Developments.

6. <u>Inventions and Patents</u>. The Participant agrees that all inventions, innovations, trade secrets, patents and processes in any way relating, directly or indirectly, to the Company's business developed by the Participant alone or in conjunction with others at any time during the Participant's employment by the Company ("<u>Inventions</u>") shall belong to the Company. The Participant will use the Participant's best efforts to perform all actions reasonably requested by the Board of Managers to establish and confirm such ownership by the Company. The obligations to assign Inventions set forth in this Section 6 apply with respect to all Inventions (a) whether or not such Inventions are conceived, made, developed or worked on by the Participant during the Participant's regular hours of employment with the Company; (b) whether or not the Invention was made at the

suggestion of the Company; (c) whether or not the Invention was reduced to drawings, written description, documentation, models or other tangible form; and (d) whether or not the Invention is related to the general line of business engaged in by the Company, but do not apply to Inventions that (x) the Participant develops entirely on the Participant's own time or after the date of this Agreement without using the Company's equipment, supplies, facilities or Proprietary Information; (y) do not relate to the Company's business, or actual or demonstrably anticipated research or development of the Company at the time of conception or reduction to practice of the Invention; and (z) do not result from and are not related to any work performed by the Participant for the Company. The Participant acknowledges and agrees that the Company has notified the Participant that, if the Participant resides in the state of California, assignments provided for in this Section 6 do not apply to any Invention which qualifies fully for exemption from assignment under the provisions of Section 2870 of the California Labor Code ("Section 2870"), a copy of which is attached as Annex I.  If applicable, at the time of disclosure of an Invention that the Participant believes qualifies under Section 2870, the Participant shall provide to the Company, in writing, evidence to substantiate the belief that such Invention qualifies under Section 2870. The Participant further understands that, to the extent this Agreement shall be construed in accordance with the laws of any state which precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this Section 6 shall be interpreted not to apply to any Invention which a court rules and/or the Company agrees falls within such classes.

**7.** Use of "employment".  For purposes of this Agreement, the term "employment" shall include any employment or other service relationship as a director or consultant.

**8.** Definition of Proprietary Information. For purposes of this Agreement, the term "Proprietary Information" shall mean (a) any information (including the name or address) relating to any customer, supplier, contractor, service provider or affiliate of the Company or any information concerning the transactions or relations of any customer, supplier, contractor, service provider, personnel or affiliate of the Company or any of its partners; (b) any information concerning any product, service, technology, process, methodology, technique, specification, algorithm, formula, know-how or procedure offered or used by the Company, or under development by or being considered for use by the Company; (c) any information relating to marketing or pricing plans or methods, capital structure, or any business or strategic plans of the Company, including with respect to market analyses, financial information, product plans and research and development; (d) any Inventions covered by Section 6; and (e) any other information which is non-public, proprietary or confidential or which the Board of Managers has determined by resolution and communicated to the Participant in writing to be proprietary information for purposes of this Agreement.  Proprietary Information" shall not include any information that is or becomes generally known to the public other than through actions (directly or indirectly) of the Participant in violation of the restrictive covenants set forth in this Agreement.

**9.** Enforcement. The Participant stipulates that the covenants contained in this Agreement are essential for the protection of the trade secrets, confidential business and technological information, customer relationships, and competitive position of the

Company; that a breach of any covenant contained in this Agreement would cause the Company irreparable damage for which damages at law would not be an adequate remedy; and that, in addition to damages and other remedies to which the Company would otherwise be entitled, it will be entitled to whatever injunctive relief is appropriate for any such breach. The parties agree that the duration, area and scope for which the covenants set forth in this Agreement are to be effective are reasonable and necessary to protect the legitimate business interests of the Company. In addition to such other rights and remedies as the Company may have at equity or in law with respect to any breach of this Agreement, if the Participant commits a breach of any of the provisions of this Agreement, the Company shall have the right and remedy to have such provisions specifically enforced by any court having equity jurisdiction, including, without limitation, the right to specific performance and temporary and/or permanent injunctive relief.  The term(s) of any covenant(s) in this Agreement will not run during any time in which the Participant is in violation of said covenant(s) and a court of competent jurisdiction shall have the power to enforce any term(s) from the date of the last breach up to a maximum of thirty-six (36) months. Notwithstanding the foregoing, if a restriction or any portion thereof contained in this Agreement is deemed to be unreasonable by a court of competent jurisdiction, the Participant and the Company agree that such restriction or portion thereof shall be modified in order to make it reasonable and shall be enforceable accordingly. The covenants in this Agreement shall survive the termination of this Agreement and the Participant's termination of employment.

Docusign Envelope ID: 22FD46AA-9E8A-433E-8F07-F3FFEC68D7AB

Name: Ivanildo Norberto Da Silva Jr.

Signature: Ivanildo Norberto Da Silva Jr.

Date: 7/26/2024

[*Signature Page to Restrictive Covenants Agreement*]